UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEKALB GENETICS CORP., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:06CV01191 ERW |
| ) | |
| SYNGENTA SEEDS, INC., et al., ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion to Transfer this action to the District of Delaware [doc. #23].

## **I. BACKGROUND FACTS[1]**

This case involves a suit for patent infringement by Plaintiff Dekalb Genetics Corporation ("Plaintiff") against numerous Defendants, for infringement of U.S. patent No. 5,554,798 ("Lundquist '798 patent"). Plaintiff is suing for infringement of the Lundquist '798 patent by Defendant through the manufacture and marketing of GA21 corn. GA21 corn is genetically modified corn which is resistant to the herbicide glyphosate, the main ingredient in Monsanto's RoundUp products. The patents surrounding GA21 corn have been the subject of numerous lawsuits between Dekalb, or their parent company Monsanto, and Syngenta. There have been two previous lawsuits initiated by Monsanto, as well as an antitrust action initiated by Syngenta. Monsanto originally sued Syngenta in Delaware district court alleging patent infringement of the

---

[1]The Court's recitation of the facts comes from both Plaintiff and Defendants memorandums in support and opposition of Defendants Motion to Transfer.

1

"Shah" patent. Subsequently, Monsanto sued Syngenta in the Northern District of Illinois for alleged infringement of two Lundquist patents. This case was transferred, upon Defendants motion, to the District of Delaware and consolidated with the Shah action pending before that court, as well as with an antitrust action brought by Syngenta. Given the long history of litigation between these two parties, Defendant Syngenta sought to transfer the current action, which also involves a Lundquist patent, to the District of Delaware.

## II. LEGAL STANDARD

28 U.S.C. § 1404(a) provides that: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry in ruling on a motion to transfer under § 1404(a), is to determine whether the case could have originally been brought in the transferee forum. *Biometics, LLC. v. New Womyn, Inc.*, 112 F.Supp.2d 869, 875 (E.D.Mo. 2000). This distinguishes a transfer pursuant to § 1404(a) from a transfer pursuant to § 1406(a), "under § 1404(a) both the transferor and the transferee court have venue over the action, but it is more efficient to prosecute the action in the later court." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 n. 3 (10th Cir. 1901).

The Eighth Circuit has held that "the statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra International, Inc. v. Mississippi Chemical corporation*, 119 F.3d 688, 691 (8th Cir. 1997). This standard is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of

case-specific factors." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal citations omitted). Courts have not limited the analysis to those specific factors listed in the statute, but rather have looked at numerous factors which play a role in the district court's decision. *Tera International Inc.*, 119 F.3d at 696; *see also Collins v. Missouri Electric Cooperative Employee Credit Union*, 2005 WL 1702687 (E.D.Mo. July 20, 2005). The burden is placed on the defendant to show that the transferee forum is more appropriate, as the plaintiff's choice of forum is given great respect. *Biometics, LLC.*, 112 F.Supp.2d at 875; *see also Terra International Inc.*, 119 F.3d at 695.

### III. DISCUSSION

The Defendant in this action seeks to transfer the case to the District of Delaware, claiming that the action is more appropriately heard in that forum. They argue that it is more convenient for the parties to be in Delaware, that one of the key witnesses in the case is within the subpoena power of the Delaware court, and that the interests of justice heavily favor transfer because two other similar actions have been heard before the Delaware court or are currently pending before that court. *Def. Memo. in Support of Def. Mot. to Transfer*, 8-13. Additionally Defendants argue that venue is proper in Delaware. *Id.* at 14. Plaintiffs respond that great deference should be given to the Plaintiff's choice of forum, and further, that a weighing of the additional factors favor keeping the case in this Court. *Pl. Mot. in Opp. to Def. Mot. to Transfer*, 9-14. Most notably, Plaintiff argues that this action could not have been brought in Delaware, because the Delaware court does not have personal jurisdiction over Defendant JC Robinson, and therefore venue is not proper in the Delaware court. *Id.* at 8.

### A. Is Venue Proper in Delaware[2]

The first question for the Court to address is whether venue would be proper in the district of Delaware. *Biometics*, 112 F.Supp.2d at 875 ("the initial inquiry. . . is whether this case might have been brought in the Central District of Illinois."). Plaintiff argues that venue is not proper in the District of Delaware because Defendant JC Robinson Seeds, Inc. ("JC Robinson"), is not subject to personal jurisdiction in the District of Delaware. *Pl. Mot. in Opp. to Def. Mot. to Transfer*, 8. The Defendant responds that Plaintiff Dekalb, and their parent company, Monsanto, have twice sued JC Robinson in Delaware. *Def. Reply Memo. in Support of Def. Mot. to Transfer*, 2, 13. One of these cases is a counterclaim, to an antitrust suit, that was asserted against the Defendants in this action, the second was a suit initiated by Monsanto against numerous defendants including JC Robinson.[3] *Id.* Defendants make two arguments in support of the Delaware court having personal jurisdiction over JC Robinson. First, Defendant argues that there are minimum contacts in Delaware, sufficient to satisfy personal jurisdiction, because of the prior litigation in which JC Robinson was involved in that forum. Second, Defendants argue that Monsanto, the parent company of Dekalb, represented to the Delaware court that jurisdiction was proper over all Defendants, and therefore the Plaintiff is now estopped from arguing a lack of personal jurisdiction over JC Robinson in that forum. *Id.* at 13.

---

[2]The Court recognizes that the Illinois district court found that venue was proper in Delaware. However, personal jurisdiction was not raised by the plaintiff in that action, and therefore it was not addressed by the court. The holding of the Illinois court is not binding on this Court.

[3]Plaintiff disputes that they have twice sued JC Robinson in Delaware. They disagree that JC Robinson was named as a defendant in the counterclaim in the antitrust action. As to the patent suit, they point out that JC Robinson was not initially named as a Defendant, and after they learned of JC Robinson, it consented to jurisdiction in Delaware.

4

Although the Defendants clearly argue that JC Robinson would subject itself, and has in prior suits subjected itself, to the jurisdiction of the District of Delaware, the Supreme Court has squarely held that a jurisdiction where venue "would have been proper," does not mean a jurisdiction where the suit "may now be rebrought with the defendants' consent." *Hoffman v. Blaski*, 363 U.S. 335, 342-343 (1960); *see also Chrysler Credit Corp.*, 928 F.2d at 1515 ("But § 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there."). Clearly, JC Robinson's consent to the Delaware District Court's jurisdiction will not be sufficient to allow transfer of the current action, assuming that transfer would otherwise be proper under § 1404(a). However, Defendants urge that by JC Robinson subjecting itself to prior lawsuits in the District of Delaware, involving the same subject matter, namely patents relating to GA21corn products, they now have minimum contacts with that district. *Hearing Transcript*, pg. 26, line 13-14 (Mr. Filibbert, Counsel for Defendant: "Minimum contacts are met in August of 2006 based on the extensive litigation activity that JC Robinson undertook."). This is a distinct argument from that discussed in the *Hoffman* case. Defendants are not arguing consent, but rather they are arguing that Plaintiff could have sued JC Robinson, in the District of Delaware, in any suit involving GA21 corn. This Court will address whether the prior litigation in Delaware is sufficient to satisfy personal jurisdiction over JC Robinson, in that forum.

In deciding whether personal jurisdiction exists over JC Robinson in the District of Delaware, the Court will look to Federal Circuit case law, as this is a patent case, as well as to the Delaware long arm statute. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) ("The Federal Circuit has exclusive jurisdiction over an appeal from a district court when that court's jurisdiction is based at least in part on a claim arising under the

patent laws of the United States."); *see also Cognex Corp. v. VCode Holdings, Inc.*, 2006 WL 3043129, at *11 (D.Minn. Oct. 24, 2006) ("When examining personal jurisdiction in the context of patent litigation, the law of the Federal Circuit applies."). Under the Federal Rules of Civil Procedure, a federal district court (here the Delaware District Court) applies the long-arm statute of the jurisdiction in which it sits, unless the Defendant is found to be a citizen of no state, and then the federal long arm provision applies.[4] *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1350 (Fed. Cir. 2002) ("Rule 4 of the Federal Rules of Civil Procedure allows a plaintiff to rely on the state long arm statute of the state in which the federal district court sits."). The district court will apply the state's long arm statute, as long as it comports with the Constitutional requirements of due process. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1376 (Fed. Cir. 2006) ("A court must examine whether service may be accomplished under the long-arm statute and whether that statutory authority comports with due process."); *See also Walker v. West Michigan Nat'l Bank & Trust*, 14 Fed.Appx. 718, 721 (3rd Cir. 2005) ("[P]laintiff was obligated to establish that the defendants were subject to the Delaware Long Arm statute and that there was no Due Process violation."); *AeroGlobal Management, LLC. v. Cirrus Industries, Inc.*, 871 A.2d 428, 438 (Del. 2005) (same). As this Court must determine whether venue would have been proper in Delaware, before

---

[4]Fed. R. Civ. P. 4(k)(1)(A) states: "Service of summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." . .."; Fed. R. Civ. P. 4(k)(2) provides for jurisdiction of the federal court over a defendant who is not a resident of any state: "If the exercise of jurisdiction is consistent with the Constitution and the laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state."

deciding whether transfer is appropriate, the Court analyzes the Delaware long arm statute, as well as the due process requirements.[5]

The Court initially notes that JC Robinson is a Nebraska Corporation, with its principal place of business in Nebraska. In order for a Delaware court to exercise jurisdiction over JC Robinson, a nonresident, it must have authority under the Delaware long arm statute.[6] *See* Fed. R. Civ. P. 4(k)(1); *see also Hercules Inc. v. Leu Trust and Banking Ltd.*, 611 A.2d 476, 480 ("First we must consider whether Delaware's long arm statute is applicable. . . ."). In applying the Delaware long arm statute this Court accepts the interpretation provided by the Delaware Supreme Court. *3D Systems, Inc.*, 160 F.3d at 1377 ("We defer to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process."). The Delaware long arm statute has been

---

[5]The Court notes that neither party raised the question of whether personal jurisdiction would have been proper under the Delaware long arm statute; focusing their arguments on whether the minimum requirements of due process were met, sufficient for a Delaware Court to exercise personal jurisdiction. However, this Court cannot transfer a case to a court where venue would not have been proper in the transferee court, and therefore must determine whether the Delaware Court could have exercised personal jurisdiction over the Defendant JC Robinson, necessitating a discussion of the Delaware long arm statute.

[6]The Delaware Long Arm Statute provides in part:

a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in this State; (3) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; (5) Has an interest in, uses or possesses real property in the State; or (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c)(1)-(5).

interpreted as conferring "jurisdiction to the maximum extent possible under the Due Process Clause. *Id.* The Defendants have not provided any evidence that Defendant JC Robinson conducts business in Delaware in any capacity, rather they rely solely on JC Robinson's prior activity in the Delaware District Court as the basis for that court's jurisdiction. This Court looks to whether jurisdiction would be proper under the Due Process Clause, as the Delaware long arm statute is construed as extending personal jurisdiction to the full extent of that clause.

In order for JC Robinson to be subject to the jurisdiction of the Delaware District Court, it must have had sufficient minimal contacts with that state for the Delaware court to exercise power over it. *International Shoe Co. v. State of Washington*, 326 U.S. 310. The Supreme Court, in interpreting the minimal contacts requirement, stated "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State. . .." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Under the facts of the case in *Hanson*, the Court held that "the cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State." *Id.* at 251. Due Process is satisfied "if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted). The Federal Circuit has articulated a three part standard, based on Supreme Court precedent, for determining whether personal jurisdiction exists: "1) the purposefully directed activities. . ., 2) their relationship to the cause of action. . .[and], 3) the constitutional reasonableness of jurisdiction." *Akro Corp. v. Luker*, 45 F.3d 1541, 1546-1549. In order for JC Robinson to be subject to the district of Delaware's jurisdiction, it must have availed itself of the privileges of that

state and the cause of action must be one which arises out of that purposeful availment. *Hanson*, 357 U.S. at 253.

In this case Defendants argue that the purposeful availment sufficient for minimum contacts is the prior litigation in which JC Robinson was involved. In support of this argument Defendants cite *Cognex Corp.*, in which the court held that "[g]iven the frequent litigation of VData in Minnesota, it is fair and reasonable for [defendant] to expect to be haled into court here." 2006 WL 3043129 at *12. However, this Court is not persuaded by the court's analysis in *Cognex Corp*. The first requirement, as articulated by the Federal Circuit, is that the defendant purposefully availed itself of the forum state. *Akro Corp.*, 45 F.3d at 1546. JC Robinson has not purposefully availed itself of the State of Delaware. The first action in which it was involved was as a defendant, and the second was a counterclaim. As the Southern District of Florida held, "a party's initiation or defense of a legal action in Florida does not provide personal jurisdiction over that party in a separate suit. . . even where. . . the later suit arises from subject matter that is similar to the earlier suit." *United States of America v. Subklew*, 2001 WL 896473, at *3 (S.D. Fla. June 5, 2001); *see also Gibbons v. Brown*, 716 So.2d 868, 870 (Fla. Dist. Ct. App. 1998) ("A current defendant's prior decision to bring a suit in Florida should not act indefinitely as a sword of Damocles hanging perilously over the head of that defendant if she later challenges jurisdiction in a separate suit (albeit a suit arising from the same subject matter)."). Secondly, even if a prior lawsuit was considered purposefully availing oneself of the laws of that forum, JC Robinson's prior litigation activity is not the subject of the present suit. *See e.g. Hanson*, 357 U.S. at 251. The activities in the forum state must give rise to the litigation. *Id.* The activity that is the subject of the present suit, is the sale of GA21 corn; this activity took place in the Midwest. JC Robinson had no contacts with the state of Delaware prior to the lawsuit by Monsanto. The

action at bar is for patent infringement, not for some activity that resulted from the litigation that took place in Delaware.[7] The third consideration articulated by the Federal Circuit is the reasonableness of the forum's state exercise of jurisdiction. *Akro Corp.*, 45 F.3d at 1549. As this court finds that the first two requirements are not met, it is not necessary to address whether the exercise of jurisdiction would be reasonable.

### B. Plaintiffs are Estopped from Asserting a lack of Jurisdiction

Defendants additionally argue that Plaintiff Dekalb's parent company, Monsanto, previously represented to the court in the District of Delaware that there was personal jurisdiction of JC Robinson, and therefore should be estopped from now asserting a lack of jurisdiction. *Def. Reply Memo. in Support of their Mot. to Transfer*, 13 ("This argument is contrary to the fact that Monsanto sued JC Robinson in Delaware twice in connection with the GA21 litigation"). Additionally, Defendants point to the fact that Monsanto "stipulated that venue over the defendants was proper in Delaware." *Id.* This Court does not see the relevance of the Plaintiff stipulating to jurisdiction over the Defendants. The fact that Monsanto previously asserted that jurisdiction was proper over the Defendants in a previous Delaware action, does not affect the question of whether venue would be proper in Delaware in this action, and as the Court has determined above, it would not. Defendants argument can be boiled down to a second attempt at arguing consent, which the Supreme Court rejected in *Hoffman*. 363 U.S. at 342-343.

---

[7]There is an eleventh circuit decision which initially seems to reach a different result. *See Huff v. Pharr*, 748 F.2d 1553 (11th Cir. 1984) ("The narrow issue of this appeal is whether the defendant's participation in the original litigation and his connection with the State of California prior to that litigation satisfy the minimum contacts requirement. . . We hold the defendant had the requisite minimum contacts."). However, this case is easily distinguishable, as the California court had jurisdiction over the defendant for purposes of the first action, based on the defendant's consent, and the second action was a suit to enforce the judgment obtained in the first action. *Id.* at 1554. Therefore, the second action was a direct result of the defendant's conduct in the first suit.

Furthermore, the cases raised by Defendants in support of this argument are factually distinguishable from the question of jurisdiction. *See e.g. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (internal citations omitted)). The policy justifications for the doctrine of judicial estoppel further emphasize its inapplicability to the case at bar. "A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006). There is no argument, from either party, that the Plaintiff could not have chosen to bring this action in Delaware, with the expectation that Defendant JC Robinson would have consented to jurisdiction. However, the fact that Plaintiff decided to bring this action in this Court is not sufficient to show that they are "perpetrating a fraud on the court." *Id*. If Plaintiff believed it would be preferable to bring this action in this Court, where venue is proper, that is the Plaintiff's prerogative. There is no evidence that either of the parties argued the question of venue or jurisdiction in the prior Delaware action. Additionally, the consent to jurisdiction in a prior suit, is not sufficient to allow this Court to transfer the case to Delaware.

## IV. CONCLUSION

The Court holds that venue would not be proper in the district of Delaware, and therefore transfer is not appropriate under 28 U.S.C. § 1404(a). In order for venue to be proper, the transferee court must have personal jurisdiction over each of the defendants. Personal jurisdiction requires minimum contacts sufficient to show the defendant purposely availed itself of that court's jurisdiction. The prior litigation in Delaware is not sufficient to satisfy this requirement. Furthermore, the fact that the Plaintiff, through its parent company Monsanto, previously asserted

11

that personal jurisdiction existed over the Defendants, is not a contrary legal position such that Plaintiff is now estopped from asserting a lack of jurisdiction in the present action. The question of the Delaware court's jurisdiction is a question of fact, which must be satisfied in order for this Court to have the authority to transfer under 28 U.S.C. §1404(a).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Transfer [doc. #23] is **DENIED.**

Dated this 29th Day of December, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE