UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEKALB GENETICS CORP., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:06CV01191 ERW |
| ) | |
| SYNGENTA SEEDS, INC., et al., ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Motion to Bifurcate [doc. #120], Defendants' Contingent Motion to Bifurcate [doc. #144], Defendants' Motion to Compel [doc. #168], Plaintiff's Second Motion to Compel [doc. #171], Defendants' Motion to Preclude DeKalb's Claim for Infringement under the Doctrine of Equivalents or Alternatively To Extend the Case Management Order [doc. #174], Defendants' Motion for Leave to Designate Certain DeKalb documents Non Confidential [doc. #188], Defendants' Motion to Clarify Memorandum and Order [doc. #202], and Plaintiff's Motion for Leave to file a Supplemental Brief [doc. #222].

**I. BACKGROUND**

Plaintiff filed suit against Defendants Syngenta, and others (collectively "Defendants" or "Syngenta") alleging patent infringement of the '798 patent. Defendants have raised a number of defenses, including non-enablement, unclean hands, and inequitable conduct. The Parties' have been pursuing discovery, and the matter is presently set for a three week jury trial to being in July, 2008. The Court held a claim construction hearing on August 15, 2007, and issued a claim construction ruling on December 21, 2007. Following the close of fact discovery, the Parties

have filed two motions to compel, which the Court will now address. Also pending is Plaintiff's motion to Bifurcate; Plaintiff seeks to bifurcate the equitable issues from the legal issues. Defendants oppose this motion, and have filed a contingent motion to bifurcate. Also pending are three motions by the Defendants, a motion to preclude a claim of infringement by Plaintiff under the doctrine of equivalents, a motion to designate certain DeKalb documents non-confidential, and a motion to clarify this Court's claim construction ruling. The Court will address each pending motion at this time.

## II. MOTIONS TO BIFURCATE

Plaintiff's petition the Court to bifurcate the jury trial on infringement from the equitable trial on Defendants' defenses of inequitable conduct and unclean hands. Defendants' oppose this bifurcation, arguing that much of the evidence related to infringement is the same as that which is relevant to Defendants' affirmative defenses, and therefore bifurcation would result in a waste of resources. Defendants also argue that it would unfairly prejudice Defendants, if Plaintiff is permitted to introduce evidence of Defendants' misconduct in support of their willfulness allegation, and yet the Defendants are precluded from introducing evidence of Plaintiff's misconduct, related to their equitable defenses. Defendants' contingent motion argues that if the Court decides to bifurcate, all issues of conduct, including Plaintiff's assertion of willfulness and damages, should be tried separately from the trial on infringement.

The Federal Rules of Civil Procedure state that:

The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim or third-party claim, or of any separate issue, or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

2

Fed. R. Civ. P. 42(b). The Federal Circuit has made clear that bifurcation may be appropriate where the claims of inequitable conduct and invalidity "are distinct and without commonality either as claims or in a relation to the underlying fact issues." *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1322 (Fed.Cir. 2006). Furthermore, "[b]ecause it is an equitable issue, the ultimate determination of inequitable conduct is committed to the discretion of the trial court." *Id.* (internal citation omitted); *see also PerSpective Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed.Cir. 2000) ("The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide."). "[A] judge retains the discretion to conduct a bench trial on the equitable issues of unenforceability in the same case where invalidity is to be tried to a jury." *Agfa Corp. v. Creo Products, Inc.*, 451 F.3d 1366, 1375 (Fed. Cir. 2006).

The Court agrees with the arguments set forth by Plaintiff, and in accordance with the discretion vested in the trial court, through the federal rules as well as Federal Circuit precedent, finds that bifurcation is appropriate in the present case. There is no need to burden the jury with evidence of equitable misconduct that is to be decided by the Court. Both of Defendants' equitable defenses, unclean hands and inequitable conduct, are equitable defenses; the Court, not the jury, is obligated to decide these issues. *See Mylan Pharmaceuticals, Inc. v. Thompson*, 268 F.3d 1323, 1331 (Fed.Cir. 2001) ("The equitable defenses include unclean hands, unenforceability of the patent for fraud and inequitable conduct, misuse, and delay in filing suit resulting in laches or estoppel."). Defendants argue that they will be prejudiced by this approach because the jury will be permitted to hear evidence of Defendants' misconduct but not Plaintiff's. The Court does not agree. Plaintiff is entitled to present evidence of the their claim of willful infringement. Evidence that is either irrelevant to the question of willful infringement, or evidence with a

prejudicial impact which outweighs its probative value, may be excluded by the Court at the appropriate time. This is also true of any evidence relating to the Defendants' state of mind. Furthermore, the risk of overburdening the jury outweighs the slight inconvenience involved in the overlap of evidence. As stated by the federal circuit, the issues of infringement and inequitable conduct are distinct questions, that need not be tried together. *Old Town Canoe Co.*, 448 F.3d at 1322. By hearing the equitable issues second, the Court can incorporate any relevant evidence from the jury trial into its ruling, without the risk of burdening or confusing the jury. Conversely, the Court finds no basis for bifurcating the issues of willfulness and damages from the question of liability. All three issues are to be decided by a jury, and therefore any delay from bifurcation is unwarranted. The Court grants Plaintiff's motion to bifurcate, and denies Defendants' contingent motion to bifurcate.[1]

## III. DEFENDANTS' MOTION TO COMPEL

Defendants seek to compel responses to their fifth set of interrogatories and third set of requests for admissions. Plaintiff refused to provide such discovery, asserting that it was untimely. It is undisputed that Defendants' served their requests for discovery on September 14,

---

[1] At the hearing, Defendants raised a second alternative; Defendants suggested that the Court hear the equitable issues first, which if ruled in favor of Defendants, would alleviate the need to have a trial on the infringement question. *See e.g. Gardco Manufacturing, Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed.Cir. 1987) ("The district court clearly did not abuse its discretion in trying Gardco's inequitable conduct claim first in this case. Such a seperation is precisely the type contemplated by Rule 42(b) and does not run afoul of the Seventh Amendment."). The Court recognizes that it is within its discretion to bifurcate the trial in either manner, however, Plaintiff makes a compelling argument that the background that must be presented in order to provide a context for the claims is vast, and trying the equitable claims first would require all of that background to be repeated a second time to a jury, if the inequitable conduct defenses fail. Furthermore, the Court notes that trying the inequitable conduct claims first would require more time between the two trials, during which the Court must issue its opinion. The Court therefore rejects Defendants' alternate suggestion.

4

2007. All fact discovery was to be completed by October 16, 2007, in accordance with the case management order.

Rules 34 and 36 of the federal rules provide that a response shall be provided within thirty days after the service of the request. Fed. R. Civ. P. 34(b) ("The party upon whom the request is served shall serve a written response within 30 days after service of the request."); Fed. R. Civ. P. 36(a) ("The matter is admitted, unless, within 30 days after service of the request . . ., the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . .."). Rule 6, of the Federal Rules, provides that "whenever a party must or may act within a proscribed period after service and service is made under Rule 5(b)(2)(B), (C), or (D), 3 days are added after the proscribed period would otherwise expire . . .." Fed. R. Civ. P. 6(e). Rule 5(b)(2)(B), (C), and (D), provide for service by some means other than by hand delivery. Fed. R. Civ. P. 5.

It is undisputed that the requests for discovery at issue here were not hand delivered, and therefore Plaintiff had thirty days, plus three additional days, in which to respond to the discovery request. The question posed by the Parties is whether this additional three days made the service of the requests untimely. The Court finds that it does not. Rules 34 and 36 require that discovery requests allow thirty days for the recipient to respond, unless some alternative agreement is made, or the Court orders otherwise. Fed. R. Civ. P. 34 & 36. The Parties cite a number of cases in support of their respective positions, however, none are dispositive of the exact question presented to the Court. It is clear that, a discovery request filed less than thirty days before the close of fact discovery is untimely. *See e.g. Kelly v. Amen Collection Services*, 2007 WL 38913, *1, n.2 (D.Minn. Jan. 5, 2007) ("[E]ven if Aman [defendant] had not responded to plaintiff's third set of discovery, this Court would have denied plaintiff's requested relief as this discovery was not

commenced in time to be completed by May 1, 2006, as directed by this Court's Amended Pretrial Scheduling Order."). It is not clear whether a request made 32 days prior to the close of fact discovery is also untimely, because of the effect of rule 6(e).

The Court recognizes that "[a]dherence to reasonable deadlines is critical to restoring integrity in court proceedings . . .[,]" however, the Court has "broad discretion with respect to discovery motions . . .." *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 764 (8th Cir. 1995). Plaintiff had thirty days to respond to Defendants discovery requests, and was permitted an extra three days because of service by mail. However, the purpose of the additional three days is to provide time for return by mail, so as to give the respondent the full thirty days to compile their responses. There is no case law cited by the Plaintiff that this additional three days is intended to determine the timeliness of the service of the requests. Defendants provided Plaintiff with sufficient time to respond to the discovery requests, and the Court now orders that Plaintiff respond to those requests.

## IV. PLAINTIFF'S SECOND MOTION TO COMPEL

The Court next considers Plaintiff's Second Motion to Compel. Plaintiff has indicated five distinct areas of discovery that they seek to compel. For ease of discussion, the Court will address each item as outlined in Plaintiffs' motion. A common theme throughout the following requests is an assertion of privilege by Defendants. The Court recognizes the importance of protecting attorney-client communications and does not seek to erode that protection. However, in response to a claim of willful infringement, Defendants have asserted that they are relying upon an advisory jury verdict that was rendered in a prior North Carolina action between the Parties. In order for Plaintiff to prepare their case, they seek information surrounding Defendants' knowledge of the advisory verdict and the patent at issue. With regards to many of the requests,

Defendants cannot avoid responding based on a claim of privilege. The information sought is factual, and Defendants have specifically, and repeatedly, stated that they did not rely on advice of counsel in producing and marketing GA21 corn.

First, Plaintiff seeks to compel a response to Interrogatory No. 17, which requests information regarding who within the company, when, how, and from whom Syngenta learned of the '798 patent. The Court addressed Interrogatory No. 17 in a previous motion to compel filed by Plaintiff. In that motion, Plaintiff specifically argued that they wanted to know when Syngenta became aware of the '798 patent. The Court granted that motion, and Defendants provided two dates to the Plaintiff, however, Plaintiff now seeks information regarding the circumstances of Defendants' acquiring that knowledge, and the specific individuals that first became aware of the patent. Defendants argue that the information requested is protected by attorney-client privilege, and furthermore, is not relevant to Plaintiff's willful infringement claim, as the alleged infringer's state of mind is not relevant to the objective recklessness standard.

The Court finds that information regarding when information was received, by whom and from whom, is not protected by the attorney-client privilege, as it requires factual answers to questions about knowledge of the '798 patent. How Defendants became aware of the information may be the subject of privileged communications, and therefore, to the extent the "how" contains privileged information, it need not be disclosed. The Court further finds that the information requested is relevant and discoverable under the standards set forth in the federal rules; "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .." Fed. R. Civ. P. 26(b)(1). The information sought is clearly relevant to the willfulness of Defendants' alleged infringement, and therefore discoverable under the rules. As stated above, whether specific evidence is ultimately admissible at trial regarding Defendants'

state of mind, is an appropriate question for an evidentiary motion prior to trial. Defendants are ordered to provide full responses as detailed above.

The second discovery response Plaintiff seeks is to DeKalb's Interrogatory No. 30, which requests non-privileged information regarding Syngenta's review of the '798 patent file history. Defendants argue that Interrogatory No. 30 is vague and ambiguous, making it unclear what non-privileged information is being sought. In their brief and during arguments before this Court, Plaintiff requests information regarding the circumstances of Syngenta's obtaining and viewing the file history of the '798 patent. The specific language of the interrogatory asks "whether there was any significance at all to the absence of the '798 patent's file history in the due diligence data room." To the extent that Plaintiff's request seeks information regarding who first viewed the patent prosecution history, and when they viewed it, Plaintiff's request is granted. Plaintiff's request regarding Interrogatory No. 30 is denied in all other respects.

Plaintiff next seeks to compel Defendants to provide a 30(b)(6) witness to testify about non-privileged information regarding Syngenta's decision to commercialize GA21 corn, the persons responsible for making that decision, its knowledge of the '798 patent, and its knowledge and reliance on the advisory jury verdict in pursuing its commercialization of GA21 corn, deposition Topic 16. Defendants respond that the information requested contains privileged communications, and that the information is unreasonably cumulative. The Court concludes that information regarding who decided to commercialize GA21 corn, when that decision was made, and whether they were aware of the '798 patent at the time of that decision, is not privileged, and therefore must be disclosed. The Court further finds that Defendants have specifically stated that they relied upon the advisory jury verdict, and therefore requiring a deponent to testify about that reliance does not require the disclosure of privileged communication. It cannot, due to

8

Defendants repeated statements that it is not relying on advice of counsel. Defendants are ordered to produce a 30(b)(6) deponent that can testify to the time Defendants decided to commercialize GA21 corn, who made those decisions, and whether the decision-makers relied upon the advisory jury verdict in making that decision. To the extent Topic 16 seeks any additional information, Plaintiff's motion to compel is denied.

The next issue argued by the Parties is Plaintiff's request for a 30(b)(6) deponent to address Topics 17, 2(b), and 2(c), which relate to the Ffybes project. Topic 2(b) seeks the identity and content of over 57,000 documents related to the Ffybes project, that were produced pursuant to this Court's July 27, 2007 order. Defendants argue that this request is vague, ambiguous and overbroad. In an effort to compromise, Plaintiff stated a willingness to compromise on the scope of the request. The Court concludes that this information is discoverable, but recognizes Defendants' argument that it is overly burdensome. The Court orders that Plaintiff identify the 20 documents that they seek to have the 30(b)(6) deponent testify regarding the Ffybes project at least three weeks prior to the scheduled deposition date, and that Defendants provide a 30(b)(6) deponent prepared to testify about these matters.

Plaintiffs also seek a 30(b)(6) deponent able to testify on Topic 2(c), which seeks information regarding amino acid changes made in the EPSPS protein utilized in the Ffybes project, who made the decision to change those proteins, when that decision was made, and the persons most knowledgeable of the changes. Defendants have refused this request on the basis of attorney-client privilege. The Court finds that information regarding scientific changes to an amino acid sequence is not protected by attorney client privilege. This is information relating to the Defendants' business and scientific decisions. Plaintiffs's motion to compel this information is

granted, Defendants' shall provide a deponent prepared to fully respond to questions related to Topic 2(c).

Plaintiff's final 30(b)(6) deponent request is for a witness prepared to testify regarding Topic 17. The Court agrees that the information sought in Topic 17(b)-(I) are relevant to the question of willful infringement and therefore are discoverable. Much of this information is the same as that sought in Topic 16, only focused on its connection with Syngenta's Ffybes program, rather than Syngenta's GA21 corn product. To the extent that these requests seek information regarding who was aware of the advisory jury verdict, who was aware of the '798 patent, when they became aware of these two items, and when and who made the decision to continue the Ffybes program, Plaintiff's motion to compel is granted; to the extent that any other information is sought, Plaintiff's motion is denied.

Lastly, Plaintiffs seek to compel a response to Interrogatory No. 34, which requests information about work known to Syngenta with EPSPS enzymes having certain mutations. Defendants assert that this information is not in the possession of Syngenta, one of the Defendants in this action, but rather is in the possession of Syngenta Biotechnology, Inc., a party that was dismissed, and Syngenta Ltd., a non-party, and therefore the information is not discoverable. Defendants also argue that the information sought is not relevant to Defendants' non-enablement claim, and to the extent that Plaintiff seeks information related to mutations used in the terminated Ffybes program, Plaintiff already possesses this information. To the extent that Defendants have access to the information sought in Interrogatory No. 34, they must provide it to Plaintiff. The Court disagrees that the information is not relevant to Defendants' non-enablement claim. Defendants seek information regarding EPSPS mutations that were known prior to the prosecution of the '798 patent, which is relevant to a non-enablement defense. Therefore, the

Court orders that any additional information, within Plaintiffs' control, must be provided to Defendants regarding the mutations used in the Ffybes program.

In accordance with the rulings above, the Court grants in part and denies in part Plaintiff's Motion to compel.

## V. DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF'S CLAIM FOR INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Due to the Court's claim construction ruling, this motion is moot. Plaintiff does not intend to pursue a claim of infringement under the doctrine of equivalents, but rather claims only literal infringement.

## VI. DEFENDANTS' MOTION TO DESIGNATE CERTAIN DEKALB DOCUMENTS NON-CONFIDENTIAL

Defendants request that a number of documents, which have been designated by Plaintiff as confidential, be designated by the Court as non-confidential. Defendants argue three bases for their motion: 1) the documents in question were used in open court during the prior North Carolina inventorship trial between DeKalb and Rhone-Pulenc Agro ("RPA"); 2) the documents were admitted into evidence during that trial; and 3) they were cited and quoted in the North Carolina inventorship opinion. Specifically, Defendants want to be able to share the documents with a Syngenta employee, Dr. DeRose, who is Syngenta's in-house expert. Plaintiff opposes sharing the documents with Dr. DeRose, arguing that they contain proprietary and confidential information that they do not wish to be shared with a high-level Syngenta employee.

The Parties do not dispute that the documents in question were originally produced in *RPA v. Monsanto Co.*, 1:97cv1138 (M.D.N.C.) ("North Carolina action"), and that a protective order was entered governing the disclosure of information in that case. Those documents were

produced a second time in the present case, under a similar protective order. The protective order limits the use of any documents which are designated by a party as confidential or restricted confidential. All of the documents at issue in this case are marked confidential or restricted confidential. It is further undisputed that if information is in the public domain, then it cannot be confidential, nor can it be the subject of a protective order. *See Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under our public-domain doctrine, materials normally immunized from disclosure under FOIA [Freedom of Information Act] lose their protective cloak once preserved in a permanent public record."). So the key question for this Court to answer is whether the documents, through their use in the prior North Carolina action, are part of the public domain. The Court concludes that they are not.

In the present case the documents were unquestionably admitted as evidence in the North Carolina action. However, they were not all made part of the trial transcript. Those portions of the documents that were specifically read into the record, or which were quoted in the North Carolina opinion, are clearly part of the public domain, and those limited portions may be used by Defendants in any manner they wish. However, the remaining portions of the documents have not been shown by Defendants to be in the public domain, and Plaintiff has provided testimony that the documents contain confidential information. The Court does not believe that merely admitting the documents into evidence waived Plaintiff's assertion of confidentiality. In *Davis v. United States Department of Justice*, the D.C. Circuit court found that only those exact portions of certain tape recordings that had been played into the record were part of the public domain. 968 F.2d 1276, 1280 (D.C. Cir. 1992). The North Carolina court has not entered a ruling making the documents public, and they are not currently accessible to the public. Therefore, the use of the documents in the North Carolina action is insufficient to make them part of the public domain.

The Court also agrees with Plaintiff, that the similarity in content between the documents at issue and the documents attached to an appeal pending before the Federal Circuit, does not make the information part of the public domain. *See Davis*, 968 F.2d at 1280 (D.C. Cir. 1992) (Holding that to make a showing that information is in the public domain, the requester of the information must "point to 'specific' information identical to that being withheld"). To the extent that portions of the documents listed in the public record before the Federal Circuit are duplicative of documents marked by Plaintiff as confidential in the pending case, Defendants may use those documents that are part of the Federal Appeals record. However, simply asserting that the subject matter is the same, is insufficient to show that all documents related to that subject matter are non-confidential. Defendants' motion is denied.

## VII. DEFENDANTS' MOTION TO CLARIFY COURT'S CLAIM CONSTRUCTION RULING

Lastly, the Court briefly addresses Defendants' motion to clarify and reconsider the Court's Claim Construction Ruling. Defendants raise two objections to the Court's Ruling. First, they assert that the Court failed to provide an explicit definition of transgenic, and that therefore the definitions provided are incomplete. Secondly, they argue that this Court improperly included mutated EPSPS enzymes in the definition of EPSP synthase. Defendants want the Court to add an explicit definition of transgenic, defined as any cell, cell line, callus, tissue, plant part or plant, the genotype of which has been altered beneficially by the presence of heterologous DNA. There is no doubt, when reading the claim constructions provided by this Court, that a transgenic plant is one that has been altered beneficially. The claim construction explicitly describes the beneficial alteration that is patented in the present case, namely resistance to normally toxic levels of glyphosate. There is no need to add an additional definition of the term transgenic. As to

13

Defendants' second argument, this Court conclusively decided that the term EPSP synthase referred to an enzyme which can be natural or mutated, and does not believe any additional discussion is required. The Court determined that the claim term was broad in meaning, and that no limitation had been placed upon it by the terms of the claims themselves, or from the specification. Therefore, Defendants motion for clarification and reconsideration is denied. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Bifurcate [doc. #120] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Contingent Motion to Bifurcate [doc. #144] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel [doc. #168] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Compel [doc. #171] is **GRANTED in part** and **DENIED in part**. Defendants shall provide an answer to Interrogatory No. 17 regarding when information was first received regarding the '798 patent, who received the information, and from whom; Defendants shall also answer how Defendants became aware of the information, to the extent that it does not implicate attorney-client privilege. Defendants shall answer Interrogatory No. 30 to the extent that it seeks information regarding who first viewed the patent prosecution history of the '798 patent, and when they viewed it; Defendants need not provide any other information sought by Interrogatory No. 30. Defendants shall provide a 30(b)(6) deponent to testify to information requested under Topic 16 to the extent that it seeks information regarding the date that Defendants decided to commercialize GA21 corn, who made that decision, and whether the decision-makers relied upon the advisory jury verdict in reaching

the decision. Defendants shall produce a 30(b)(6) deponent prepared to testify regarding Topic 2(b); Plaintiff shall identify twenty (20) documents three (3) weeks prior to the scheduled deposition, and the deposition shall be limited to those twenty (20) documents. Defendants shall provide a 30(b)(6) deponent prepared to fully respond to questions related to Topic 2(c). Defendants shall provide a 30(b)(6) deponent prepared to reply to Topic 17, to the extent that it seeks information regarding who within Syngenta was aware of the advisory jury verdict, who within Syngenta was aware of the '798 patent, when they became aware of these two items, and when and who made the decision to continue the Ffybes program; to the extent Topic 17 seeks any additional information, Plaintiff's motion is denied. Defendants shall provide a full response to Interrogatory No. 34, to the extent that the information is within their control.

**IT IS FURTHER ORDERED** that Defendants' Motion to Preclude DeKalb's Claim for Infringement under the Doctrine of Equivalents or in the Alternative to Extend the Case Management Order [doc. #174] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to Designate Certain DeKalb Documents Non-Confidential [doc. #188] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Clarification and Reconsideration of Court's Claim Construction Decision [doc. #202] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to file Supplemental Opposition Brief [doc. #222] is **DENIED**.

**IT IS FURTHER ORDERED** that the previous Referral to Alternative Dispute Resolution is **VACATED**. This matter may be referred back to ADR upon request of the parties.

Dated this 12th Day of February, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE